UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | Criminal No. 04-379 (RCL) |
| GERALD EILAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter comes before this Court on the Government's motion [457] for anonymous jury and other security precautions, filed on December 23, 2005. Seven of the nine active defendants filed, on January 6, 2006, oppositions to the United States' motion, including defendant Gaskins [458]; defendant Moore [464]; defendant Plummer [465]; defendant Ingram [466]; defendant Thomas [467]; and defendant Butcher [468]. On January 7, 2006, defendant Eiland also filed an opposition [472], and since it was untimely, he filed a motion [471] for leave to late file. Several defendants then moved to join their co-defendants' oppositions: defendant Butcher [469] on January 6, 2006; defendant Bryant [470] on January 7, 2006; and defendant Moore [476] on January 12, 2006.

All parties appeared before this Court for a hearing on January 17, 2006, and pursuant to an Order issued on January 20, 2006, the Government submitted additional documents under seal for *in camera* review on January 27, 2006. At that point, defendant Eiland moved [483] for disclosure of the documents submitted for *in camera* review on January 23, 2006; and several defendants moved to join Eiland's motion, including defendant Thomas [485] on January 23, 2006; defendant Gaskins [487] on January 24, 2006; defendant Plummer [488] on January 24,

2006; and defendant Butcher [504] on January 30, 2006.

Upon a thorough review of each party's filings, the applicable law and the entire record herein, this Court has determined that all motions [469, 470, 476, 485, 487, 488, 504] for leave to join shall be GRANTED; defendant Eiland's motion [471] for leave to late file his opposition shall be GRANTED; the United States' motion [457] for anonymous jury shall be GRANTED; and defendant Eiland's motion [483] to view the *in camera* submission shall be DENIED.

## I. BACKGROUND

The defendants are charged in a 96-count Fourth Superseding Indictment ("Indictment"). All nine defendants currently pending trial are charged in Count One, Narcotics Conspiracy and in Count Two, RICO Conspiracy. Defendants Eiland and Miller are charged also in Count Three, Continuing Criminal Enterprise. At least one but not all remaining defendants are also charged with the following: possession with intent to distribute narcotics (Counts 8-9, 11-13, 15-16); distribution of narcotics (Count 10); use of a communications facility to facilitate possession with intent to distribute narcotics (Counts 17-76); interstate trafficking of stolen motor vehicles (Counts 77-89); conspiracy to commit murder (Count 90, 93); first degree murder as accessory after the fact (Count 91); accessory to murder after the fact (Count 92); murder conspiracy in aid of racketeering activity (Count 94); and firearms offenses (Counts 95-96). The defendants have been separated into two groups for trial: the first shall commence on March 6, 2006 and the second begins on September 6, 2006.

The United States requests that this Court issue an Order imposing precautionary measures designed to ensure the jurors' safety. Specifically, it seeks an order that (1) voir dire will be limited to prevent disclosure of the name, address, place of employment, and any other

identifying information of potential jurors in the venire; (2) the jurors will be transported by the U.S. Marshal's Service from an undisclosed location at the beginning of each trial day and returned to that location at the end of each day; (3) the jury will remain together during lunch recesses and remain with a Deputy U.S. Marshal escort; (4) trial proceedings will be conducted in the "secure courtroom"; (5) the jury will be instructed that these administrative procedures are routine and have no impact on any defendant's guilt or innocence.  (Govt.'s Mot. 2-3.)

The Government contends that the circumstances of this case mandate protection of the jury (*id*. at 4-9) and need not interfere with defendants' rights to a fair trial (*id*. at 9-10). Defendants dispute both the need for the precautions and the Government's assessment that they would not unfairly prejudice defendants.

## II.  DISCUSSION

Use of an anonymous jury and related precautions raises the concern of prejudice to a defendant's constitutional right to a presumption of innocence as well as to his ability to exercise peremptory challenges.  *United States v. Edmond*, 52 F.3d 1080, 1090 (D.C. Cir. 1995).  The use of such measures nonetheless is approved in this Circuit when two requirements are met: "there is strong reason to believe the jury needs protection" and the court "tak[es] reasonable precautions to minimize any prejudicial effects on the defendant[s] and to ensure that [their] fundamental rights are protected."  *United States v. Childress*, 58 F.3d 693, 702 (D.C. Cir. 1995) (quoting *Edmond*, 52 F.3d at 1090).

A.      *Reason to Believe the Jury Needs Protection*

In order to determine whether the first requirement is satisfied, a court considers five factors:

> (1) the defendant's involvement in organized crime; (2) the defendant's participation in a group with the capacity to harm jurors; (3) the defendant's past attempts to interfere with the judicial process; (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties; and (5) extensive publicity that could enhance the possibility that jurors names would become public and expose them to intimidation and harassment.

*Edmond*, 52 F.3d at 1091.  No single factor is dispositive; nor are all factors required.  *Id*.  Rather, the inquiry involves balancing the defendant's right to conduct meaningful voir dire against both the jury's interest in protection and the public interest in the jury rendering a fair and impartial verdict.  *Id.* at 1090.  The court may be guided by information contained in the indictment as well as *in camera* submissions, and if such documents provide a sufficient basis for its decision, the court need not hold an evidentiary hearing.  *Id*. at 1089, 1092.

   1.     *Organized Crime*

Defendants in this case are charged with participation in an ongoing conspiracy to distribute illegal narcotics, as well as participation in a RICO conspiracy.  Several defendants are named in violent charges relating to murder and firearms offenses that were allegedly undertaken in furtherance of the conspiracies.  Based on the information contained in the public record as well as that discussed in the Sealed Appendix to this Order ("Appendix"), there is sufficient basis to conclude that defendants are involved in organized crime.

   2.     *Capacity to Harm*

The charges contained in the Indictment reveal that defendants' organization had both the

capacity and willingness to harm others to further the interests of the enterprise. Members of the group allegedly engaged in violent activity and several members allegedly possessed firearms. Defendants allegedly engaged in deliberate, planned schemes to harm others deemed to be a threat to the organization. Some defendants appear to argue that if each is not individually accused of violence, he cannot be considered a threat to the jury. (Gaskins' Mot. 5-6; Moore's Mot. 1; Butcher's Mot. ¶ 7.) The standard is more fluid, however: more peripheral members of a conspiracy can nonetheless present a risk, both by themselves and because others associated with the group may act on their behalf. *See, e.g., Childress*, 58 F.3d at 703 (noting that "it was entirely appropriate" for the trial court to consider the "dangers posed, not just by the . . . defendants themselves, but by other members of the conspiracy as well"). For the reasons indicated above and those described in the Appendix, this Court finds that these defendants have participated with a group that has the capacity to harm jurors.

       3.       *Interference with the Judicial Process*

Defendants are alleged to have participated in numerous acts to obstruct justice. On or about January 2, 2002, defendant Miller allegedly impersonated a police officer to gain access to a co-conspirator in jail in order to confirm the identity of a suspected government witness, who defendants Eiland and Miller allegedly sought to murder. (Govt.'s Mot. 6-7.) Defendants Miller and Moore are also alleged to have bugged a witness room to eavesdrop on conversations of a witness. (Govt.'s Mot. 7.) Some defendants challenge the Government's assertion as "mere speculation" (Gaskins' Mot. 5; *see also* Moore's Mot. 2-3), but this Court finds that the allegations are sufficiently grounded in fact. Moreover, predicting the likelihood of future events based on past acts is inherently speculative, as other courts have acknowledged. *See Childress*,

58 F.3d at 702 ("Decisions on sequestration and anonymity require a trial court to make a sensitive appraisal of the climate surrounding a trial and a prediction as to the potential security or publicity problems that may arise during the proceedings."); *see also id.* at 703 (noting that it was proper for the trial court to make an "inferential leap" in concluding "that defendants or their colleagues might tamper with the upcoming proceedings"). The evidence described here and in the Appendix amply demonstrates both past attempts to interfere with the judicial process and a likelihood of doing so in the future.

    4.    *Lengthy Punishment Upon Conviction*

All defendants face sentences of up to life imprisonment if convicted. *See* 21 U.S.C. § 841(b). They also face substantial monetary penalties. Therefore, the factor addressing whether defendants face a lengthy punishment upon conviction is easily met.

    5.    *Extensive Publicity*

This factor is concerned with the possibility that extensive publicity could result in the public exposure of jurors' names, making them vulnerable to harassment. In this case, the public is likely to be interested in a trial alleging a wide-ranging criminal organization that supplied large quantities of narcotics to the District of Columbia and whose members allegedly used violence in pursuit of the organization's goals. Even before the trials have begun, there has been limited media interest in the case generally, and particularly as to defendant Moore. Such publicity reasonably can be expected to increase as the trials get underway and new details are revealed.

Based on the Government's showing, this Court finds that the first prong of the test has been met. There is, in this case, strong reason to believe that the jury needs protection.

B.   *Reasonable Precautions*

The second requirement for the empaneling of an anonymous jury is that the Court must take reasonable precautions in order to minimize any prejudicial effects on defendants and to protect their fundamental rights.  To that end, this Court shall employ two primary measures.

First, it shall use a questionnaire and extensive voir dire to examine the jurors' backgrounds.  *See Edmond*, 52 F.3d at 1092 (finding extensive voir dire "more than adequate to compensate for the information denied by juror anonymity"); *United States v. Barnes*, 604 F.2d 121, 135-36 (2d Cir. 1979) (describing extensive voir dire "which resulted in the selection of a panel whose background was fully explored").  As defendant Ingram notes, defendants' ability to exercise peremptory challenges is adequately safeguarded by the use of an extensive questionnaire, and the information that will be kept from defendants is of comparatively less significance.  (Ingram's Mot. 1-2.)

Second, the Court shall instruct the jury that the precautions are being observed for a neutral reason and that defendants are to be presumed innocent until proven guilty.  Jurors are presumed to follow the Court's instructions.  *Marshall v. Lonberger*, 459 U.S. 422, 428 (1983).  Some defendants dispute the effectiveness of instructions in overcoming the prejudice of the precautions.  (Ingram's Mot. 3.)  This Court does not find, however, reason to presume that the instructions would be ineffective.

These procedures are sufficient to minimize any prejudice to defendants that might arise from the use of an anonymous jury.  *See Edmond*, 52 F.3d at 1094; *Childress*, 58 F.3d at 703.  Contrary to the suggestion made by some defendants (*e.g.*, Gaskins' Mot. 1; Thomas' Mot. 6; Butcher's Mot. ¶¶ 9-10), this Court does not find that granting the Government's motion raises

any new issues warranting severance.

C.      *Disclosure of* in Camera *Submission*

In response to defendant Eiland's request (joined by several co-defendants) to view the *in camera* submission that the Government filed under seal in support of its motion for anonymous jury, this Court finds no basis to require such disclosure. The submission contains detailed factual representations that might reveal the identity of government witnesses. In addition, it contains information that was obtained during grand jury testimony. As such, revealing the submission to defendants would violate the confidentiality of the grand jury proceedings and might present a risk to government witnesses.

### III.  CONCLUSION

For the foregoing reasons, this Court has determined that all motions [469, 470, 476, 485, 487, 488, 504] for leave to join shall be GRANTED; defendant Eiland's motion [471] for leave to late file his opposition shall be GRANTED; the United States' motion [457] for anonymous jury shall be GRANTED; and defendant Eiland's motion [483] for disclosure of the *in camera* submission shall be DENIED.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, January 31, 2006.